650 F.2d 28
 24 Wage & Hour Cas. (BN 1324
 M. Curtis ROWLAND, Malcolm Bailey, Kent Hudson, R. D. Mason,
William Murray, Willie Redd, Franklin Shelton,
Averett Simpson, and all other Virginia
Tobacco Growers Similarly
Situated, Appellees,
v.
F. Ray MARSHALL, United States Secretary of Labor, and David
O. Williams, Administrator, United States
Employment Service, Appellants.
 No. 80-1451.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 1, 1980.
Decided March 23, 1981.
 
 John S. Edwards, U. S. Atty., Roanoke, Va. (Thomas R. King, Jr. and Thomas J. Bondurant, Asst. U. S. Attys., Roanoke, Va., Carin Ann Clauss, Sol. of Labor, Nathaniel Baccus, III, Associate Sol., Lois G. Williams, Deputy Associate Sol., Kerry L. Adams, U. S. Dept. of Labor, Washington, D. C., on brief) for appellants.
 Albert D. Misler, Washington, D. C. (Morris Kletzkin, Friedlander, Misler, Friedlander, Sloan & Herz, Washington, D. C., on brief) for appellees.
 Before WINTER, SPROUSE and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Several Virginia tobacco growers who filed petitions with the Immigration and Naturalization Service to admit nonimmigrant aliens[1] for the 1980 tobacco harvest brought an action in district court to enjoin the Secretary of Labor (hereafter "the Secretary") from imposing a $3.51 adverse effect wage rate (AEWR) on them for the 1980 season. The AEWR is the rate that an employer must pay both domestic and foreign agricultural workers if he seeks to import temporary foreign laborers into the United States. 20 C.F.R. 655.200(b).[2] The purpose of the AEWR is to prevent the importation of nonimmigrant aliens from deflating the wages and from adversely affecting the working conditions of United States workers similarly employed. 20 C.F.R. § 655.0(e).
 
 
 2
 A significant factor in assessing the AEWR is the extent to which the use of aliens in a particular area has depressed the wages of similarly employed domestic workers. If the Secretary finds that the use of aliens has not had a depressing effect, he may conclude that the prevailing wage rate is the AEWR. 20 C.F.R. § 655.200(b). If the use of aliens has affected the wage rate, however, the AEWR may be set higher than the prevailing wage rate. Since 1968, the Secretary has computed the AEWR for any given affected area using the methodology set forth in 20 C.F.R. § 655.207(b)(1), which provides in relevant part:
 
 
 3
 (T)he adverse effect rate for each year shall be computed by adjusting the prior year's adverse effect rate by the percentage change (from the second year previous to the prior year) in the U. S. Department of Agriculture farm wage rates for agricultural workers.
 
 
 4
 Virginia has traditionally used a significant number of aliens as temporary agricultural labor and as a result has been deemed an affected area. Thus, its 1980 AEWR of $3.51 for agricultural workers was computed using the above formula.
 
 
 5
 In the court below, the tobacco growers contended that the Secretary exceeded his authority and acted arbitrarily and capriciously in promulgating the 1980 AEWR because (1) the underlying data included wages for those whose employment is not similar to that of the tobacco workers, (2) the 1980 AEWR was higher than necessary to avoid wage deflation, and (3) the 1980 AEWR did not reflect the 1980 prevailing wage rate of $3.10 for Virginia tobacco workers. The district court initially issued a temporary restraining order which was dissolved pending further hearings. After such hearings, the district court found that the 1980 AEWR was arbitrary and capricious because the Secretary did not take into consideration the prevailing wage rates of tobacco workers in Virginia or of those employees engaged in similar work. It, therefore, granted a permanent injunction. The district court also found, however, that the importation of alien workers into Virginia to assist in the 1980 tobacco harvest would have an adverse effect on the wages and working conditions of United States workers similarly employed. Furthermore, it concluded in its oral findings that the methodology used by the Department of Labor was not arbitrary and capricious.
 
 
 6
 We conclude that the district court's finding that the admission of temporary foreign workers into Virginia would have an adverse impact on the wages and working conditions of similarly employed domestic workers is not clearly erroneous. Moreover, the district court did not abuse its discretion in concluding that the methodology used by the Department of Labor for calculating the AEWR is not arbitrary and capricious.[3]
 
 
 7
 We cannot, however, support the district court's conclusion that the 1980 AEWR for Virginia tobacco growers was arbitrary and capricious simply because it failed to take into consideration the 1980 prevailing wage rate for Virginia tobacco workers and others similarly employed. There is no statute or regulation requiring the Secretary to consider the prevailing rate in an affected area in computing the AEWR. In fact, the prevailing wage rate in an affected area has little significance, as it is depressed by the presence or potential influx of alien workers. See, e. g., Williams v. Usery, 531 F.2d 305 (5th Cir.), cert. denied, 429 U.S. 1000, 97 S.Ct. 527, 50 L.Ed.2d 610 (1976). The statute empowering the Secretary to set the AEWR grants him broad discretionary authority to choose any reasonable formula to compute such a figure. Florida Sugar Cane League, Inc. v. Usery, 531 F.2d 299 (5th Cir. 1976). Recognizing the Secretary's broad authority, we conclude that the Secretary did not act arbitrarily or capriciously in calculating the $3.51 AEWR. Accordingly, we vacate the permanent injunction issued by the district court and remand this case to the district court for further action consistent with this opinion.
 
 VACATED AND REMANDED
 
 
 [1]
 A nonimmigrant alien is defined as:
 an alien having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country.
 8 U.S.C. § 1101(a)(15)(H)(ii).
 
 
 [2]
 AEWR is defined as:
 The wage rate that the Administrator has determined must be offered and paid to foreign and U. S. workers for a particular occupation and/or area so that the wages of similarly employed U. S. workers will not be adversely affected.
 
 
 [20]
 C.F.R. § 655.200(b)
 The Administrator is defined as the chief official of the United States Employment Service. Id.
 
 
 [3]
 There is ample evidence in the record to support this latter conclusion, including evidence that the Department of Labor reviewed the AEWR methodology in 1977 by testing it against other possible methodologies. Using the various methodologies studied in 1977 with the 1980 data, the Department of Labor found that the AEWR methodology currently used produced results comparable to those produced by the other potential methodologies. There also was substantial evidence showing that tobacco workers are considered unskilled laborers who are likely to migrate from crop to crop. Such evidence supports the validity of the underlying data base, which is not crop specific